PARTIDO POPULAR ET AL., Petitioners, *v.* CARLOS GALLARDO, EXECUTIVE SECRETARY OF PUERTO RICO, Respondent.

No. 338. Argued April 30, 1940.—Decided May 8, 1940.

*Rodolfo Ramírez Pabón, V. Gutiérrez Franqui, F. M. Susoni Jr., Miguel Parga, Jorge V. Toledo, Edelmiro Soldevila, Jaime J. Saldaña,* and *Samuel R. Quiñones,* for petitioners. *George A. Malcolm, Attorney General,* and *Luis Janer, Assistant Prosecuting Attorney of the Supreme Court,* for respondent. *Dubón & Ochoteco* for Partido Liberal Puertorriqueño, intervener.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

Petitioners herein invoked the original jurisdiction of this court by applying for a writ of mandamus directed to Car-

los Gallardo, Executive Secretary of Puerto Rico, to order him to accept the petitions filed in his office by certain voters of the municipal district of Río Piedras for the registration of the Partido Popular and to proceed to register the said party and its ticket, as provided by law.

Petitioners allege that in the general 1936 election the total number of ballots for all the candidates for Resident Commissioner to the United States in the Río Piedras election precinct was 12,131; that prior to January 19, 1940, more than 1,250 qualified voters of the Río Piedras election precinct, duly registered in said precinct, filed in the office of the Executive Secretary of Puerto Rico numerous petitions with a recital of the facts required by law, among which the name and residence of the candidates, offices for which they were respectively nominated, and the name and badge of the political party whose registration was sought, and there was also filed by the nominated candidates an affidavit by each of them setting forth their intention to accept and fill their respective offices in the event of their election.

The Executive Secretary accepted the petitions and registered the party and the nominated candidates, but noticing that more than 200 of said petitions had been sworn to in Río Piedras before the municipal judges of Cayey and Patillas respectively, and in compliance with the legal opinion of the Attorney General of Puerto Rico who held that the oaths administered by said municipal judges outside their respective districts were void, canceled the registration of the Partido Popular in Río Piedras, relying for his opinion on the fact that, as the petitions sworn to before said offices were void for lack of a valid oath, the number of the remaining petitions filed was not sufficient to make up the 10 per cent required under section 37 of the election law in force. This was communicated to the Partido Popular through its president in the following letter:

"LA FORTALEZA,
Puerto Rico.

San Juan, January 19, 1940.

"Mr. Luis Muñoz Marín,
President Partido Popular,
c/o La Demacracia,
San Juan, P. R.

"Sir:

"Referring to our letter of December 26 ult. in connection with the challenge to the registration of the Partido Popular in Río Piedras, I want to inform you that we have just received from the Attorney General of Puerto Rico, in answer to our inquiry, an opinion in which he holds that Messrs. Angel M. Díaz and Miguel Bauzá, municipal judges of Cayey and Patillas, respectively, are not qualified to administer oaths in Río Piedras; that oaths administered by them within the said judicial districts are void, and, finally, that the petitions for registration containing such oaths are void.

"This office, therefore, rules that the petitions of the Partido Popular in Río Piedras, sworn to before the aforesaid judges are void and ineffective. Consequently, the registration of the Partido Popular in Río Piedras is canceled for lack of petitions duly filed, according to law, in sufficient number to cover the 10 per cent as required by section 37 of the election law in force.

"Respectfully,

(Signed:) C. Gallardo,
Per: D. Brown, Assistant Executive Secretary."

Petitioners allege that subsequent to January 19 ult. there were filed in the office of the Executive Secretary of Puerto Rico more than 100 petitions in addition to those already mentioned, all of them sworn to before the municipal judges of Río Piedras, making up thus the total number of petitions, besides 1,350 petitions of which more than 200 are free from the defect indicated by the respondent.

In their argument upon the mandamus petition, petitioners allege that the administration of an oath is a ministerial act and therefore that the powers conferred by law on municipal judges is not restricted to their respective municipal judicial districts; that the Executive Secretary of Puerto Rico was and still is without authority to cancel the peti-

tions in question or to cancel the registration of the Partido Popular in Río Piedras, because the authority conferred on him by the Election Act for registering candidates and parties by petition is ministerial and is restricted to the receiving of such tickets by petition as are filed in his office, and that he is without discretion as to said petitions and that he is without authority to pass upon them once they are filed in his office, the less so after accepting them; that section 37 of the Election Act, as amended by Act No. 74 of July 30, 1923, is unconstitutional (reasons set forth), and that therefore 200 petitions are sufficient for the registration of the Partido Popular and its candidates in the Río Piedras precinct.

The 18th of last month at 2 p.m. was set for hearing the parties upon the propriety of the remedy. The parties appeared, the respondent through the Attorney General who filed a motion challenging our assumption of original jurisdiction of the case, and thereupon, without withdrawing said motion, filed a demurrer to the sufficiency of the mandamus petition. At the commencement of the hearing the Partido Liberal moved for leave to intervene as *amicus curiæ,* and, upon the motion being granted, filed also a demurrer to the sufficiency of the mandamus petition. On the 30th of last month petitioners filed their reply to the brief of the *amicus curiæ,* and after the hearing of oral argument the case was taken under advisement.

■ As a preliminary question, we will first determine whether the facts of the instant case warrant our assumption of original jurisdiction invoked by petitioner.

This is an action against one of the high officers of the Insular Government; the issues involved are of great public interest, and, above all, the right of petitioners to a reasonable opportunity to present new petitions in case the contention of respondent is upheld requires a prompt and final decision. This could not be secured if the case were origin-

ally filed in a district court ana they had to wait until, on, appeal, this court could settle the case.

Upon consideration of the concomitant circumstances and of the further fact that on former occasions we have assumed jurisdiction in similar cases (*Martínez Nadal* v. *Saldaña, Executive Secretary*, 38 P.R.R. 398), it is our opinion that the use of a sound discretion requires our assumption of the jurisdiction invoked by petitioners. Let us now dispose of the legal issues raised.

■ The first is: Is a municipal judge empowered to administer oaths outside the territorial limits of his municipal judicial district?

Section 2 of the Act authorizing certain officers to administer oaths, etc. (Comp. 13), as amended by the Act of March 9, 1910 (Sess. Laws of 1910, Comp. 13), in specifying which officers are authorized to administer oaths, affidavits, etc., provides in its pertinent part as follows:

"All oaths, affidavits, or affirmations, necessary or convenient or required by law, may be administered within Porto Rico, and a certificate of the fact given, by any Judge of the Supreme Court, or by any judge of a District Court, or by any secretary of either of the above mentioned courts, or by any justice of the peace or municipal judge, or by any notary public, or by any Commissioner of the United States for the District of Porto Rico; , , , ,"

In *Soto* v. *Treasurer of Puerto Rico*, 53 P.R.R. 904, invoked by both sides, there was challenged the authority of the assistant secretary of the District Court of San Juan to administer an affidavit to be presented in connection with an action pending in the District Court of Mayagüez, on the ground, advanced by the appellant, that the assistant secretary of a district court can not administer oaths in connection with papers to be used in actions pending in a court other than that where such officer discharges his duties. Upholding the authority of the assistant secretary and the consequent validity of the affidavit, we said then:

"Section 2 of the Act governing sworn statements (affidavits, oaths, and affirmations) as amended by the Act of March 9, 1910, authorizes any clerk of a district court or of the Supreme Court to take oaths, and makes no distinction between their authority for that purpose and that conferred upon the Justices of the Supreme Court, district judges, municipal judges, or justices of the peace. There is no provision whatever, as we have said, limiting the powers of the clerks of the district courts to administer oaths in suits or proceedings prosecuted before the court in which they are acting. In the case of *Pérez et al.* v. *López, District Judge,* 18 P.R.R. 630, it was decided only that a clerk of a municipal court has no power to administer oath to a complaint to be filed in a district court; but the Act which empowers the clerks of municipal courts to administer oaths is that of March 8, 1906, page 101, a statutory provision distinct from section 2, *supra,* authorizing clerks of the district courts, Justices of the Supreme Court, etc., to administer oaths."

In expressing ourselves thus, we had in mind the question now before us, that is, whether a sworn statement authorized by an assistant secretary of a district court may be used or presented in any part of the Island of Puerto Rico outside the territorial jurisdiction of the court where such officer discharges his duties. Hence, limiting the language perhaps somewhat ample of the first part of the paragraph transcribed, we said immediately after:

"There is no provision whatever, as we have said, *limiting the powers of the clerks of the district courts to administer oaths in suits or proceeding prosecuted before the court in which they are acting.*" (Italics ours).

The power itself is the same in all judicial officers irrespective of their rank. It is section 30 of the Code of Civil Procedure which limits, not the power itself, but the territory within which the same may be exercised by judicial officers other than the Justices of the Supreme Court or the judges of the district courts, by prescribing:

"Section 30.—The justices of the Supreme Court, and the judges of the district courts, *have power in any part of the Island,* to take and testify:

"1.        .        .        .        .        .        .        .        .        .        .        .        ~

"2. An affidavit or deposition to be used in this Island. (Italics ours.)

There is nothing in the above legal provision regarding other judicial officers authorized to administer oaths, and therefore when construing the scope of section 30, *supra,* it must be understood that these latter officers can not exercise such power outside the territorial jurisdiction of the court to which they have been appointed. *Expressio unius est exclusio alterius.*

If the intention of the legislature had been to confer a like power on all other judicial officers, it would have been easy for it to express its intent, by either mentioning them together with the Justices of the Supreme Court and the judges of the district courts, or—and this would have been easier—by completely leaving out subdivision 2 of section 30, *supra,* keeping then as the only legal provision on the matter section 2 of the Act first mentioned which, as we have seen from the above, establishes no difference in the power of the several judicial officers for administering oaths.

■ It is contended by petitioners that section 2 of the general law on affidavits, etc., as amended in 1910, is dated subsequent to section 30 of the Code of Civil Procedure and, therefore, that such section has been tacitly repealed.

In so arguing, petitioners forget that the section 2 in question, such as the same was originally drafted in 1903, read as follows:

"Section 2.—All oaths, affidavits, or affirmations necessary or required by law, may be administered within Porto Rico and a certificate of the fact given, by any judge of the Supreme Court, or by any judge of a district court, or any secretary of the said courts or by any justice of the peace, or by any Municipal Judge, or by notary public."

So that section 2 in 1902 was drafted, in so far as the authority of officers to administer oaths is concerned, substantially the same as it was finally drafted after being amended in 1910. Both legal provisions, section 2, *supra,*

and section 30 of the Code of Civil Procedure, have been in force ever since 1904 without the prevailing legal situation in regard thereto being altered by the 1910 amendment, *supra.* Since repeals by implication are not favored, and as there is nothing to prevent both provisions from being in force together, we can not agree with petitioners that section 30, *supra,* has been repealed by the general law previously mentioned.

In *Kollock* v. *Russell,* 294 N.Y.S. 712, affirmed by the *Appellate Division* of New York in *In re Kollock,* 294 N.Y.S. 714, it is held that the methods required by the statute to authenticate petitions by nomination have as their object the prevention of possible fraud, deceit or confusion, and should be strictly complied with.

In our judgment, the oaths authorized by the municipal judges of Cayey and Patillas outside their respective municipal judicial districts are void, and as the Election Act requires petitions for registration to be sworn to, those sought to be verified before said officers lack the above requisites and are, therefore, void.

The second question raised by petitioners is: Has the Executive Secretary power, under the law, to reject a petition which fails to meet the legal requisites, and can he exercise such power and leave without effect the acceptance of the petitions after having accepted them and registered the party?

In our opinion both powers are vested in him. Section 37 of the Election Act, as amended by Act No. 114, approved May 15, 1936, (1936 Sess. Laws), minutely specifies the requisites of a petition for registration, and any petition which fails to contain said requisites is not the petition in contemplation of the law and therefore must not be accepted. It is the duty of the Executive Secretary to examine the petitions so as to determine whether they comply with the legal requisites, among which is to be found one requiring that "Each of said petitions shall be duly sworn to before some judicial

officer of Puerto Rico authorized to administer oaths; . . ." See by way of illustration the case of *Clark* v. *Nash,* 19 A.L.R. 304, 307.

The legislator, being aware of the power conferred by section 37 of the Election Law on the Executive Secretary of Puerto Rico, limited the same by the last paragraph of said section as follows:

"The Executive Secretary is not authorized and shall not have power to pass upon the eligibility of any candidate whose nomination may be filed in his office."

If no power had been conferred on the Executive Secretary, what purpose would be served by limiting a power that did not exist?

The fact that he inadvertently accepted as valid petitions which failed to meet the legal requisites is no bar to his correcting the error forthwith, giving the petitioners an opportunity to file new petitions, for which section 37 itself allows them a term that shall not expire until twelve o'clock noon of August 25, 1940.

█ There is left for our consideration now the alleged unconstitutionality of section 37 of the Election Law in so far as the same requires that the number of petitions must be equal in number to 10 per cent of the total vote cast for all the candidates for Resident Commissioner to the United States, in the precinct, municipality, district, or the Island, as the case might be, at the previous election, respectively.

Corpus Juris prescribes the rule to be applied for determining the constitutionality of an Act of this character. It is as follows:

"NUMBER OF SIGNERS.—The requirements as to the number of petitioners is mandatory. The determination of what shall be a reasonable number of signers for an independent nomination is primarily a matter for the legislature and not for the courts; but the legislature may not impose unreasonably or unnecessary limitations which will deprive independent bodies of equality of opportunity to make nominations." 20 C. J. 111, sec. 107 and cases cited.

A New York statute requires that independent nominations for elective offices in any political subdivision of the State may only be made by petition of 5 per cent of the total number of votes cast for the Governor in the preceding election, it being further provided that in no case more than 3,000 petitions shall be required. There was involved the nomination of a municipal judge for the City of New York and it was therein alleged that the statute was unreasonable and therefore unconstitutional, inasmuch as the same required for the nomination of a municipal judge the same number of petitions as that required for the office of Mayor of New York or district attorney for a county, which offices are more important than that of a municipal judge. It was held by the court that the argument of appellants should be directed to the legislature and not to the courts, and affirmed the judgment denying the writ of mandamus because of the failure to present the number of petitions required by law. *Matter of Greenwald* v. *Boyle,* 179 App. Div. 672, upheld in an opinion *per curiam* of the New York Court of Appeals in 221 N.Y. 688; *In re Richards et al.,* 117 N.E. (Court of Appeals of New York) 615.

We do not go as far as the above cases in holding that the reasonableness of the number of petitions required by law is a question exclusively reserved for the legislature. We think, on the contrary, that courts have the power to pass upon the constitutionality of the present as well as of any other statute; but the exercise of such power requires, bearing in mind the presumption of constitutionality existing in favor of laws and the mutual regard that should exist between the three branches of the Government, that the statute be so manifestly unreasonable that the same amounts to a denial of a right.

In the case at bar, the number of petitions required under section 37 of the Election Law does not go beyond the limits of reasonableness. The best proof of it is the petition for mandamus itself filed in the instant case. Not only is it

alleged by petitioners that they have filed in the office of the Executive Secretary the number of petitions required by law—which in this particular case would be 1,213—but that they have filed more than 1,350 petitions (Petition, par. 12). Moreover, as appears from paragraph 1 of the petition, the petitioning party has registered in the office of the Executive Secretary candidates by petition for the coming election "in more than ¾ of the election precincts of the whole Island of Puerto Rico and by more than 10 per cent of the total vote cast for all the candidates for Resident Commissioner to the United States in the last preceding election."

Under such circumstances, how can it be maintained that the number of petitions required by section 37, *supra,* is so excessive that it amounts to a denial of the right to register candidates by petition? The facts, eloquently, show otherwise

Petitioners allege that in *Martínez Nadal* v. *Saldaña, Executive Secretary,* 38 P.R.R. 398, this court declared section 37 under consideration unconstitutional.

Such statement is incorrect. The only statement in that case in this respect appears on page 412 where we said:

"Perhaps if the law for inclusion by petition had been more liberal something might be said in favor of nominations by petition. The Legislature has not seen fit to modify section 37 requiring 10 per cent of the total vote even by petition, although it seems to be considered high and *a judge of this court in 1924 expressed his opinion that it was unconstitutional."* (Italics ours.)

The paragraph just transcribed is far from expressing that this court has made such declaration as to unconstitutionality. It seems well to state further here that although eight years afterwards the Legislature amended section 37 of the Election Law (Act No. 114 of May 15, 1936), it did not consider it wise to change the 10 per cent requisite.

Lastly, it is alleged by petitioners that the part of section 37 fixing the number of petitions required for the nomination

of candidates by petition is void as being uncertain, for said section requires that the 10 per cent be computed on the basis of the total vote cast for all candidates for "Commissioner to the United States", and as such office is nonexistent in Puerto Rico, there is no basis on which to compute the 10 per cent referred to therein.

Such argument is exceedingly weak. The Organic Act created the office of "Resident Commissioner to the United States", to be chosen by the vote of the people. No other Commissioner to the United States is elected by vote, and it is easily understandable that the "Commissioner to the United States" referred to in section 37 of the Election Law is no other than the "Resident Commissioner to the United States" created by the Organic Act.

Therefore, the demurrer for insufficiency shall be overruled and the writ of mandamus denied.